**In re Robert DONAHUE, Sr., Debtor.**

**Bankruptcy No. 98–10021 FGC.**

United States Bankruptcy Court,
D. Vermont.

June 1, 1998.

R. Rice, Cohen & Rice, Rutland, VT, for Robert Donahue ("Debtor").

R.W. Kozlowski, Lisman & Lisman, Burlington, VT, for Michael Tatko ("Creditor").

## AMENDED MEMORANDUM OF DECISION CONFIRMING CHAPTER 13 PLAN AND DENYING RELIEF FROM STAY

FRANCIS G. CONRAD, Bankruptcy Judge.

We are charged with [1] the apparently simple matter of deciding the confirmability of Debtor's plan, but upon close examination, find confusion and doubt with regard to many aspects of existing law. Creditor raises several chapter 13 confirmation issues, and, after addressing each in turn, we hold that 1) Debtor is entitled to cure Creditor's claim; 2) Debtor may modify Creditor's rights under the plan; and 3) cause exists to extend the length of the plan to 60 months. Additionally, we hold that the property consisting of Debtor's primary residence is necessary for an effective reorganization and therefore deny Creditor's Motion for Relief from Stay as to such property, but grant Relief from Stay with respect to the remaining 30 acres. The only issue remaining is the valuation of the ten acres to be retained by Debtor. If the parties cannot agree, a valuation hearing shall be set to determine the matter.

### FACTUAL AND PROCEDURAL HISTORY

On July 11, 1990, Debtor purchased a fifty acre parcel of property [2] from Creditor in exchange for a promissory note and mortgage. Payments were not being made to Creditor's satisfaction and a foreclosure action was initiated in Rutland Superior Court on March 17, 1995. On November 25, 1996, ten of the fifty acres were sold and the proceeds were relinquished to Creditor in partial satisfaction of the debt. Both parties' current appraisals performed in connection with this challenge to confirmation identify the remaining forty acres as divided into four lots of approximately ten acres each. Credi-

tor's appraisal includes a plot sketch designating the lots "3A" through "3E." The sold lot is shown as lot "3A," and the lot on which the Debtor's mobile home sits is marked lot "3D."

On August 7, 1996, Debtor filed a petition under chapter 13,[3] and the case was converted to chapter 7 on April 8, 1997. Debtor received a chapter 7 discharge on September 29, 1997. On May 14, 1997, we granted relief from stay, and Creditor filed a motion in the Rutland Superior Court foreclosure action for summary judgment and a shortened redemption period. Those motions were granted on June 20, 1997, and Debtor's redemption period ran on January 5, 1998. The redemption period as to the last creditor entitled to redeem ran on January 8, 1998. Debtor commenced the present chapter 13 case on January 8, 1998.

Debtor's petition lists Bullfrog Hollow Road as his street address. He lists no rental or mortgage payments on any home or property on Schedule J, but he does list real estate taxes and property insurance as expenses. Creditor's real estate appraiser determined lot "3D" to include "a long slate drive, a cleared mobile home site, a detached concrete pad, a drilled well and an outhouse." Lacroix Appraisal p. 18. Mr. Lacroix also includes photographs of the site showing a mobile home on lot "3D" with the caption "Lot 3D Improvements." Lacroix Appraisal p. 12. Debtor maintains that lot "3D" is his principal residence although he occasionally stays with his brother in Rutland due to health problems. Creditor disputes Debtor's residency, pointing to the lack of electric service, potable water supply, or septic system. Objection to Confirmation p. 7, fn. 4. Creditor's own appraiser, however, notes the existence of a drilled well and an outhouse on lot "3D." Lacroix Appraisal p. 18. We find the manner in which Debtor lives inconsequential. A home is a home, whether primi-

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (G), (L), and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P.

Rule 52, as made applicable by F.R.Bkrtcy. P.Rule 7052.

2. The property is located on Bullfrog Hollow Road in Wells, Vermont.

3. Case no. 96–10807.

tive or luxurious, and it is not our place to impose lifestyle standards on anyone. We find it entirely plausible that lot "3D" is Debtor's principal residence.

Debtor seeks to return lots "3B", "3C" and "3E" and pay Creditor the value of lot "3D" over 60 months. Debtor claims lot "3D" is valued at $8,500 and proposes to pay $5,000 to Creditor on the effective date of the plan, amortizing the remaining $3,500 at 7% over 60 months.

## DEBTOR'S RIGHT TO CURE

■ Creditor argues Debtor has no interest in the property because his redemption period ran on January 5, 1998. This, argues Creditor, removes the property from consideration as property of the estate and therefore may not be used to fund Debtor's plan. Creditor cites *Burlington Savings Bank v. Stowe Center, Inc.*, (D.Vt., Docket No B79–48, 1979 (unpublished) (*aff'd* 614 F.2d 1285 (2nd Cir.1979)), for its holding that a mortgagee gains title to property at the close of the redemption period and Debtor's right to redeem is absolutely extinguished at that time. *Burlington Savings Bank v. Stowe Center, Inc.*, (D.Vt., Docket No B79–48, 1979 (unpublished)) (*aff'd* 614 F.2d 1285 (2nd Cir. 1979)). Creditor's reliance on *Burlington Savings Bank* is misplaced. We direct Creditor's attention to the date of that decision. The case upon which Creditor relies was decided in 1979, prior to Congress' enactment of § 301 of the Bankruptcy Reform Act of 1994, Pub.L. 103–394 (Oct. 22, 1994) which became effective for all cases commenced after October 22, 1994. This "new" provision provides in part, "(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is

sold at foreclosure sale:" 11 U.S.C. § 1322(c)(1). Section 1322(c)(1) was designed to safeguard "a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale." H.R.Rep. 103–834, 103rd Cong., 2nd Sess. (Oct. 4, 1994); 140 Cong.Res. H10769 (Oct. 4, 1994). It was added to the Code to allow debtors in bankruptcy the fresh start they are entitled to. It also is intended to provide the most extensive cure rights, whether provided by state law or by this provision. *Id.*

■ Aware that § 1322(c)(1) specifies "foreclosure sale" as the deadline for a cure to be effectuated and that Vermont has adopted strict foreclosure, we need to address the unique interaction between Vermont state law and the federal Bankruptcy Code. In Vermont, unless a power of sale is contained in the mortgage and invoked by the mortgagor upon foreclosure, title will vest in the mortgagee without any sale, provided the proper steps are taken by the mortgagee. For title to pass to the purchaser following a judicial foreclosure sale, judicial confirmation of the sale must be filed in the land records.[4] The sale is not complete for purposes of a debtor's right to cure until every step necessary for a sale to be complete under state law is taken. *In re Barham*, 193 B.R. 229 (Bkrtcy.E.D.N.C.1996), *In re Jaar*, 186 B.R. 148 (Bkrtcy.M.D.Fla.1995). Under Vermont law, a foreclosure sale is not complete until the order of confirmation of the sale issued by the state court is filed in the land records in the town where the property is located. 12 V.S.A. § 4533.

■ The final step required for title to vest in the mortgagee upon strict foreclosure is to file a certified copy of the judgment in the land records of the town in which the property is located.[5] Vermont's requirement

4. 12 V.S.A. § 4533.

5. Vermont statute § 4529 provides:
"In the foreclosure of equity of redemption in lands, where the time for redemption has expired, the party obtaining the foreclosure shall cause to be recorded in the office where by law a deed of the lands is required to be recorded, within thirty days after the expiration of the time

of redemption, a certified copy of the judgment." 12 V.S.A. § 4529.
This section must be read in conjunction with the next. Section 4530 provides
"Such foreclosure shall not transfer title to such lands as against subsequent purchasers, mortgagees or attaching creditors, unless such copy of record or such decree or copy thereof is thus left for record ... If not thus left for record, such

that a certified copy of the judgment be recorded in the land records where the property is located is tantamount to the last step necessary to complete a sale. Being the final action necessary to foreclose, Debtor's right to cure is not extinguished until it occurs.

That we do not have facts before us to determine whether a power of sale was invoked, or for that matter even contained in the mortgage is of no import. We do not need this information to hold that Debtor's right to cure through a chapter 13 plan, as provided by § 1322(b)(3) and (c)(1), is preserved until the property is sold at foreclosure sale or, in the case of strict foreclosure, until the certified copy of the judgment is filed with the town clerk where the property is located. This filing must occur within 30 days after the expiration of the time of redemption, or in the present controversy, January 8, 1998. 12 V.S.A. § 4529. Debtor filed his chapter 13 petition before the expiration of the time for redemption [6] and is thus well within his right to effectuate a cure.

## PROPERTY DISTRIBUTION

■ Debtor proposes a unique and creative alternative to the loss of his home. He seeks to return 30 of the 40 acres to Creditor and retain the remaining 10 acres, paying Creditor the $8,500 claimed value over 60 months. Creditor, rejecting this proposal, wants all the land back. Debtor argues that by returning land and paying the value of the remaining 10 acres over sixty months, the plan provides for the payment of the full value of Creditor's claim through a distribution of property, satisfying the "cramdown" provisions of § 1325(a)(5). With the exception of the proper valuation of the retained parcel of land, we agree.

Under § 1325(a)(5)(B), if the holder of an allowed secured claim does not accept the plan, it may be confirmed if the creditor retains the lien securing the property and

"the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii).

One question we are confronted with is whether an "eat dirt" plan is permissible under chapter 13.[7] Debtor proposes to distribute to Creditor property and cash in satisfaction of the debt. Creditor insists this type of plan is only contemplated for use under a chapter 12 plan. Debtor cites *In re Kerwin–White* to urge us that a creditor's claim can be fully satisfied in a chapter 13 with a distribution of property if the property has a value at least equal to the amount of the claim. *In re Kerwin–White*, 129 B.R. 375, (Bankr.D.Vt.1991), (*aff'd* at 996 F.2d 552 (2nd Cir.1993)). We think this reliance is proper. Although the debtor in *Kerwin–White* was a farmer and was reorganizing under chapter 12, the provisions relied upon by the court allowing such action contain identical language to the corresponding chapter 13 provisions. In searching for legislative history of chapter 12, the *Kerwin–White* court noted the following:

[W]hile § 1225's legislative history is quite sparse, the legislative history of § 1325— on which § 1225 was patterned—supports allowing the transfer while finding the lien requirement satisfied. Congress based chapter 12 on chapter 13 in order to provide a bankruptcy process for family farmers similar to that available under chapter 13. *See* H.R.Conf.Rep. No. 958, 99th Cong., 2d Sess. 48 (1986), *reprinted* in 1986 U.S.C.C.A.N. 5246, 5249 (This new chapter is closely modeled after existing Chapter 13). Significantly, 11 U.S.C. § 1325(a)(5) in chapter 13 contains language identical to that in § 1225(a)(5). *In re Kerwin–White*, *Id.* at 559–560.

lands shall be subject to redemption by subsequent purchasers, mortgagees or attaching creditors, as though the time of redemption had not expired." 12 V.S.A. § 4530.

**6.** It is immaterial that January 8 was not Debtor's redemption date. In the case of a foreclosure sale, Debtor would be permitted to file a petition after his redemption date but before the

sale. Here he is permitted the same luxury of filing a petition after his redemption period but before the certified judgment is filed.

**7.** An "eat dirt" plan, as it is affectionately known, is a plan whereby a debtor offers a secured creditor real property to satisfy a debt.

The court's interpretation of § 1225(a)(5)(B) applies to § 1325(a)(5)(B), the provision containing identical language found in chapter 13. If Creditor retains his lien, and the value of the property to be distributed is equal to Creditor's claim, the claim is adequately provided for and Debtor may "cramdown." If, however, Creditor's claim is secured *only* by a security interest in real property that is Debtor's principal residence, Debtor may not modify Creditor's rights under § 1322(b)(2) by bifurcating the claim into secured and unsecured portions. In short, Debtor must pay the full allowed claim of $71,240.33.

■ Section 1322(b)(2) prohibits the modification of the rights of a secured creditor whose claim is "secured *only* by a security interest in real property that is the debtor's principal residence ..." 11 U.S.C. § 1322(b)(2) (emphasis added). Debtor tries to circumvent the limitation imposed by § 1322(b)(2) by arguing that he received a discharge under chapter 7, and therefore Creditor's claim "is based solely on the value of the 40 acres of real estate now owned by the debtor, as the underlying debt was discharged in the Debtor's prior Chapter 7 proceeding." Debtor's Memorandum, 5/15/98, p. 8.

Despite the extinguished personal liability of the debt, the United States Supreme Court has held that a chapter 7 discharge does not "strip down" a lien secured by real estate to the value of the property. *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). The Court in *Dewsnup* held that a creditor's lien passes through the bankruptcy. *Id.* at 418, 112 S.Ct. 773. In the present case, *Dewsnup*, which was decided under chapter 7, must be read in conjunction with *Nobelman v. American Savings Bank*, a case decided under chapter 13. *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In *Nobelman*, the Supreme Court held

§ 1322(b)(2) prevents modification of the rights of a secured claim secured only by the debtor's principal residence and therefore prevents a chapter 13 debtor from bifurcating the claim into secured and unsecured portions. The Court stated that § 506(a) permits a determination of the extent of a creditor's secured claim [8], but that determination "does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Id.* at 329, 113 S.Ct. 2106. While bifurcation may occur theoretically, a debtor must treat the claim as fully secured and may not segregate the same claim into different classes slotted for differing treatment.

One 'right' retained by Creditor includes the judgment of foreclosure. This judgment, issued by the state court, determined the balance due on the underling loan, not the balance due on the value of the property. Modifying this right if the lien secures only Debtor's principal residence would violate § 1322(b)(2). *See In re Kirchner*, 216 B.R. 417 (Bkrtcy.W.D.Wis.1997) ('Chapter 20' plan [9] impermissibly modified the rights of a mortgagee after a foreclosure judgment had been obtained.)

■ Debtor's principal residence is Bullfrog Hollow Road and is secured by Creditor's lien. Debtor's plan limits his principal residence to the mobile home and ten surrounding acres and proposes to modify Creditor's rights by distributing 30 acres to Creditor and paying the value of the remaining property in satisfaction of a debt under § 1325(a)(5)(B)(ii). Creditor contends that § 1325(a)(5)(B)(ii) applies to the entire forty acres, because, if Bullfrog Hollow Road is Debtor's principal residence at all, it is not limited to ten acres but consists of the entire parcel. A determination as to when Debtor's property is his primary residence for purposes of § 1322(b)(2) is made at the com-

---

**8.** "An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property ..." 11 U.S.C. § 506(a).

**9.** A chapter 20 plan is a chapter 7 liquidation, followed by a chapter 13 plan.

mencement of the case. *In re Wetherbee*, 164 B.R. 212 (Bkrtcy.D.N.H.1994). At the commencement of this case, the ten acre lot designated "3D" and a mobile home was Debtor's primary residence, and the remaining thirty acres were divided into three additional lots.

■■■■ Ordinarily, excess property surrounding a debtor's home would not sufficiently remove § 1322(b)'s constraints. "The fact that a claim is secured by a debtor's residence that sits on a large parcel of land which (sic) is not designated for use by more than a single family will not alone remove a claim from the protection of § 1322(b)(2)." *In re Adebanjo*, 165 B.R. 98, 103 (Bkrtcy. D.Conn.1994). A claim secured by property not intended for occupancy by the debtor, but for some commercial or income producing purpose, however, is not protected. *Id.* Additionally, a claim securing real estate divided into several lots does not benefit from § 1322(b)(2) and may be modified by Debtor, even if Debtor occupies one of the lots as his principal residence. *See In re Morphis*, 30 B.R. 589, 594 (Bkrtcy.N.D.Ala.1983).

In 1990, Debtor purchased a fifty acre lot. In 1996, he sold 10 acres of that property with Creditor's permission and paid the proceeds to Creditor. Both parties hired real estate appraisers who represented the remaining forty acres on hand drawn maps as being divided into four, ten acre lots, more or less. Creditor's appraiser informs us that "[b]ased upon certain surveys and estimates for development, the site appears to contain 4 building lots." Lacroix Appraisal p. 18. These lots are easily partitioned from the rest, each fronted by a public road (Bullfrog Hollow Road), not occupied by Debtor, and easily valued. Based on the fact that a 10 acre parcel has already been sold with the permission of Creditor, and that both appraisals show the property as subdivided into four building lots, we hold that § 1322(b)(2) does not apply. Creditor's claim is not secured only by a security interest in real property that is Debtor's principal residence and Debtor may modify Creditor's rights by distributing the divided thirty acres and paying fair market value to Creditor for the remaining 10 acres through the plan.

## § 1325(A)(5)

■■■ Having satisfied the hurdle presented by § 1322(b)(2), we must address whether Debtor's plan satisfies the "cramdown" provisions contained in § 1325(a)(5)(B). The plan provides for Creditor to retain the lien on the property under section II.3., satisfying § 1325(a)(5)(B)(I). The second requirement is more problematic. Creditor's rights may be modified because we have held that Debtor may distribute property to satisfy Creditor's debt, and that Creditor's rights may be modified, we are left with deciding the fair market value of lot "3D."

Debtor values the property at $8,500 and proposes to pay Creditor $5,000 in one lump sum at the effective date of the plan, making payments under the plan of $58.33, plus Trustee's 10%. Creditor's real estate appraiser values Debtor's 10–acre parcel at $10,000, plus $6,000 in improvements. The Town of Wells value the entire 40 acres at $21,444. We find there is too much discrepancy for a determination concerning the value of lot "3D" to be made here. If an agreement is not reached, the issue shall be decided at a valuation hearing.

## RELIEF FROM STAY

Creditor seeks relief from the automatic stay under § 362(d). Section 362(d) provides that a court shall grant relief from the stay "(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; (2) with respect to a stay of an act against the property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d).

■■■■ Debtor argues § 362(d) is inapplicable in chapter 13 cases. This is contrary to the weight of authority that § 362(d) is applicable in chapter 13 cases. *Grundy National Bank v. Stiltner*, 58 B.R. 593 (W.D.Va. 1986), *In re Garner*, 18 B.R. 369, 371 (S.D.N.Y.1982). In a decision reached by a District Court decided on appeal from a bankruptcy court in a chapter 13 case, it was held that the "Bankruptcy Court erred in failing to apply section 362(d)(2) to [a] Chap-

ter 13 proceeding." In re *Garner, supra* at 371. The court went on to conclude that "[i]t is undoubtedly 'necessary to an effective reorganization' to maintain the stay and prevent foreclosure where the main objective of the proceeding is to save [a debtor's] home." *Id.* In further support of this proposition, the court in *Grundy* noted that "an irrebuttable presumption is created in a Chapter 13 case as to the debtor's home as necessary to effective reorganization where the debtor's primary purpose in filing the Chapter 13 petition is to save his home." *Grundy National Bank v. Stiltner,* 58 B.R. 593, 596 (W.D.Va.1986). The only secured debt listed by Debtor is Creditor's claim. The remaining debt is $4,354.62 in unsecured claims. The petition was filed 'on the eve of foreclosure.' We think it is obvious that Debtor filed this case in an effort to save his residence.

Creditor disputes the assumption that Debtor's home is necessary for survival and thus for an effective reorganization by citing *In re Kornhauser,* 184 B.R. 425 (Bkrtcy. S.D.N.Y.1995). We decline to follow *Kornhauser* here, as it is a chapter 11 case, and the test applying § 362(d) to a case under chapter 13 is decidedly different where the debtor's home is at issue. Again, there is an *irrebuttable presumption* that a chapter 13 debtor's home is necessary for an effective reorganization. In re *Garner, supra* at 371, *Grundy National Bank v. Stiltner, supra* at 596.

 On the other hand, lots "3B," "3C," and "3E" are not necessary for an effective reorganization. Debtor does not operate any business requiring retention of the 30 acres for income, and if this property is sold to produce income, the proceeds would most likely be returned to Creditor in satisfaction of the debt.

Relief from stay with respect to lots "3B." "3C," and "3E" is granted because the 30 acres of divided property that is not Debtor's primary residence is not necessary for an effective reorganization. Creditor's request for relief from stay to foreclose on lot "3D,"

which is Debtor's primary residence, is denied.

## FIVE YEAR PLAN

 Creditor objects to Debtor's proposal of a five year plan, calling it a violation of § 1322(d).[10] Although this is not an issue of first impression for this court, we have yet to memorialize our consistent rulings from the bench that cause exists for a chapter 13 debtor to extend a plan beyond three years to effectuate a cure of a long term debt, such as a mortgage. We are not alone. *In re Masterson,* 147 B.R. 295 (Bkrtcy.D.N.H. 1992) (chapter 13 plan proposing to cure mortgage arrearage in 56 months not unreasonable), *In re Fries,* 68 B.R. 676 (Bkrtcy. E.D.Pa.1986) (sufficient cause is shown by debtor's inability to cure in a shorter time). We have held and will continue to hold that every chapter 13 plan proposing to extend payments for more than three years must be looked at on a case by case basis. Debtor's plan proposes to cure a long term mortgage obligation over 60 months. This is sufficient cause to allow Debtor to extend his plan.

## CONCLUSION

As of the commencement of this chapter 13 case, Debtor's principal residence was Bullfrog Hollow Road. Since a chapter 13 debtor may cure an arrearage on a mortgage encumbering his principal residence up until the foreclosure sale is completed, we hold that, in a strict foreclosure action, Debtor's right to cure his mortgage under chapter 13 extends until the certified copy of the foreclosure judgment is filed with the town clerk where the property is located. Debtor may modify Creditor's rights under the plan by bifurcating the claim into secured and unsecured portions because Creditor's lien encumbers 30 acres owned by Debtor as well as Debtor's principal residence. Although determinations as to cause to extend a plan will made on a case by case basis, curing a mortgage obligation constitutes cause to extend the length of Debtor's plan to 60 months. Lastly, the property consisting of Debtor's

---

**10.** "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years." 11 U.S.C. § 1322(d).

primary residence is necessary for an effective reorganization and therefore Creditor's Motion for Relief from Stay as to such property is denied. Relief from Stay with respect to the remaining 30 acres is granted. The value of lot "3D" shall be decided at a hearing for that purpose, unless the parties agree sooner. The parties shall settle an order consistent with this memorandum within 10 days of its issuance.