**In re Peter M. DRISCOLL and Isabel B. Driscoll, Debtors.**

**Bankruptcy No. 98–10052 FGC.**

United States Bankruptcy Court, D. Vermont.

July 20, 1998.

D. Dunn, Esq., Potter Stewart, Jr. Law Offices, P.C., Brattleboro, Vt, for Vermont National Bank ("VNB").

J. Emens, Esq., Obuchowski Law 'Offices, Royalton, Vt, for Peter M. Driscoll and Isabel B. Driscoll ("Debtors").

B.D. Lambeck, Esq., Paterson & Walke, P.C., Montpelier, Vt for Vermont Economic Development Authority ("VEDA").

J. Sensenich, Esq., White River Junction, Vt, Standing Chapter 13 Trustee ("Trustee").

## MEMORANDUM OF DECISION CLARIFYING SCOPE OF STAY

FRANCIS G. CONRAD, Bankruptcy Judge.

VNB seeks[1] a clarification of the scope of the automatic stay from this court to clear the way for the State court to issue a Certificate of Non–Redemption against junior lienholders in VNB's foreclosure action against Debtors. We hold that issuance of the Certificate would violate the automatic stay.

## FACTUAL AND PROCEDURAL HISTORY

VNB's first and second mortgages on Debtors' home total $103,000. Debtors' property is further encumbered by two junior liens, held by VEDA and Vaughn's Seed Company ("Vaughn's"). On July 24, 1997, the Orange Superior Court issued a Consolidated Judgment Order, Decree of Foreclosure and Replevin ("Order") against Debtors, in favor of VNB and VEDA.[2] Debtors' statutory six month redemption period was to expire on January 16, 1998. The Order specified that if Debtors failed to redeem by January 16, 1998, they would be "foreclosed and forever barred from all equity of redemption in the Subject Premises." Order, p 6. The Order goes on to provide that in the event Debtors failed to redeem by the date set, Vaughn's would have the opportunity to

redeem until January 19, 1998, and if it did not, its interest would be foreclosed and forever barred. *Id,* at 7. Finally, in the event that either Debtors or Vaughn's failed to redeem by their respective dates, VEDA would have the opportunity to redeem on or before January 20, 1998. *Id.* On January 15, 1998, prior to all specified redemption dates, Debtors filed this Chapter 13 case. The property remains unredeemed. Debtors have filed a plan of reorganization providing for VEDA and VNB to be paid the value of their respective secured claims.[3]

## DISCUSSION

■ Central to our discussion is the question of whether the automatic stay suspends the running of the statutory redemption period. We hold that because any act by a junior lienholder to redeem the property would upset the status quo, the running of the redemption period is tolled through the pendency of the case, or, until the stay is lifted.

Fundamental to the bankruptcy system is the imposition of the automatic stay. The filing of a bankruptcy petition automatically invokes the stay, enjoining all parties against the commencement or continuation of any action against the debtor that could have been brought before the case was filed. 11 U.S.C. § 362. It also prevents "(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate ...; (4) any act to create, perfect, or enforce any lien against property of the estate ..." 11 U.S.C. § 362(a). This injunction was intended by Congress to afford debtors a high degree of protection against creditors' collection efforts, permitting either an organized liquidation of the estate or an orderly reorganiza-

**1.** Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to the Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (G) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. Rule 52, as made applicable by Fed.R.Bkrtcy.P. Rule 7052.

**2.** VEDA cross claimed in the foreclosure action, Vaughn's did not.

**3.** Debtors' plan has not yet been confirmed, and we make no findings as to its confirmability at this time.

tion. HR Rep No.595, 95th Cong., 1st Sess 340–341 (1977). Additionally, it was designed to preserve the status quo by protecting creditors from unsuspecting attacks by more diligent, powerful creditors. Without the stay,

> certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payments of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. *Id.*

The Bankruptcy Code lists actions exempt from the stay. 11 U.S.C. § 362(b). Several courts have extended the list contained in the statute by holding that the stay does not toll the redemption period provided by state law. 11 U.S.C. § 362(b); *Johnson v. First National Bank of Montevideo*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Eagles*, 36 B.R. 97 (9th Cir. BAP 1984); *Triangle Management Services v. Allstate Savings and Loan Association*, 21 B.R. 699 (N.D.Cal.1982). Rejecting the contention that the stay tolls the redemption period, the court in *Johnson* cited the Supreme Court's decision, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), for the proposition that, where Congress has not defined property rights by federal statute, they are to be determined by state law. *Johnson, supra.* The *Johnson* court was convinced that permitting the bankruptcy court to suspend the running of the redemption period would be to enlarge the debtor's property rights beyond those specified by the state legislature. *Johnson, supra* at 273–274.

■ We wholeheartedly agree that the consequences and property rights resulting from an expired redemption period in a non-bankruptcy situation are a product of state law. *See generally Butner v. United States, supra.* We also agree that where Congress has not spoken, state law property rights control. *Id.*

A mortgagor in Vermont has six months from the date the judgment for foreclosure is entered to redeem. 12 V.S.A. § 4528. Here, Debtors were given until January 16, 1998, or their equity of redemption was to be foreclosed forever. After that date, Debtors could never again claim an interest in the property, but "subsequent purchasers, mortgagees or attaching creditors" retain the right to redeem "as though the time for redemption had not expired," until a certified copy of the judgment for foreclosure is filed in the land records. 12 V.S.A. § 4530. The court in *Johnson* recognized that in cases where some action is necessary to transfer title upon the expiration of the redemption period, the stay acts to suspend that period. *In re Johnson, supra* at 277. In Vermont, at the expiration of the redemption period, the foreclosing creditor is required to file a copy of the judgment in the land records prior to taking title to the property. 12 V.S.A. § 4530. This action is itself prevented by the stay. The expiration of the redemption period is suspended as to the listed parties until the act required is performed. Junior lienholders fall into the category provided for by Vermont law, and because the stay prevents the filing of the judgment, the redemption period for "subsequent purchasers, mortgagees, [and] attaching creditors" is tolled until the stay is lifted.

We have held that a Chapter 11 debtor's right to redeem continues until a certified copy of the foreclosure judgment is recorded in the land records, because the trustee and debtor have the power of a hypothetical lien creditor under § 544. *In re Shea Realty*, 21 B.R. 790, 792 (Bkrtcy.D.Vt.1982). This applies to debtors filing under both Chapters 11 and 12 because both § 1107(a) and § 1203 give debtors in possession the rights and powers of a trustee. 11 U.S.C. § 1107(a); 11 U.S.C. § 1203. By virtue of 12 V.S.A. § 4530, Chapter 11 and 12 debtors' "equity of redemption is a substantial right vested in the debtor as of the date of filing of its petition for relief and ... it operates to postpone the enforcement of the mortgage lien" by preventing the judgment from being filed in the land records. 12 V.S.A. § 4530; 11 U.S.C. § 544(a)(1); § 1107(a); § 1203; *In re Shea, supra* at 793. The tolling of the

redemption period preserves property rights possessed by a debtor at the time of filing. *See generally In re Jenkins*, 19 B.R. 105, 110 (D.Col.1982).

Debtors filing under Chapter 13 of the Bankruptcy Code do not enjoy the benefit of a similar provision. By choosing to file under Chapter 13, Debtors have extended their state law property rights in the form of a Congressionally granted right to cure the default on the mortgage encumbering their principal residence and to reinstate the loan according to its original terms. *See generally, In re Taddeo*, 685 F.2d 24 (2d Cir.1982) (Congress intended to allow mortgagors to de-accelerate the original mortgage and reinstate the original payment schedule.) Debtors in Chapter 13 retain this right up until the time the property is sold at foreclosure sale.[4] 11 U.S.C. § 1322(c). By enacting § 1322(c), Congress has spoken on the continuation of a Chapter 13 debtor's property rights after the state set redemption period has passed.

The case at hand is very fact specific. When VNB initiated its foreclosure proceedings, VEDA cross claimed. VEDA was poised, according to Vermont law, to take possession of the property upon redemption. *See generally First Vermont Bank & Trust Company v. Kalomiris*, 138 Vt. 481, 418 A.2d 43 (1980). Yet the provisions of the stay specifically include the prevention of any action to take possession or control of property of the estate. 11 U.S.C. § 362(a)(3). VEDA was therefore prevented from redeeming the property by the stay. As to VEDA, the stay acts to protect Debtors themselves.

■ The application of the stay to Vaughn's is more indirect. Vaughn's chose not to answer the complaint and did not cross claim. If Vaughn's redeemed, it could not take possession unless it foreclosed against Debtors. Therefore, it is not restricted by the stay in the same manner as VEDA.

However, Debtors intent to cure within 60 months through the plan renders the home property of the estate, and all creditors are prohibited from enforcing any judgment against either Debtors or the property. If Vaughn's redeemed the property, paying the full value of VNB and VEDA's claims, Vaughn's, a judgment creditor, would effectively be forced to extend a loan to Debtors, where none was originally intended. The terms of the "new" loan would be undetermined at the time the petition was filed and could only be created after Vaughn's redemption, in effect creating a lien, a violation of § 362(a)(6). 11 U.S.C. § 362(a)(6). On the other hand, if the terms of the "new" loan are left undetermined until the stay is lifted or the case closed, it is foreseeable that Debtors' reorganization efforts may be hampered. The Second Circuit Court of Appeals has given guidance in this area by instructing that "[i]f action taken against the non-bankrupt (sic) party would inevitably have an adverse impact on property of the estate, then such action should be barred by the automatic stay." *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir.1987).

If VNB is permitted to receive a Certificate of Non–Redemption against Vaughn's, in the future, any creditor in Vaughn's position would have the obligation to redeem, despite the stay, or lose its claim forever. One essential purpose of the automatic stay is to preserve the status quo in a bankruptcy context. Permitting a senior creditor to remove itself from the bankruptcy by compelling a junior creditor to pay senior's interest does not preserve the status quo. If junior creditor's interest was less than the cost required to redeem, should junior lienholder be forced to pay that price or risk losing its claim, and furthermore not be able to take any action against the debtor until the stay was lifted? This quandary would be contrary to the objectives of bankruptcy, which include the or-

---

4. "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at foreclosure sale that is conducted in accordance with applicable nonbankruptcy law ..." 11 U.S.C. § 1322(c)(1).

In the case of strict foreclosure, a Chapter 13 debtor retains the right to cure until the creditor files a certified copy of the judgment for foreclosure in the land records. *In re Donahue*, 221 B.R. 105 (Bkrtcy.D.Vt.1998).

derly determination of creditor priority, and would clearly promote a creditor race to the assets.

While Vaughn's act to redeem the property would not extinguish Debtors' redemption right, it would 1) change Debtors' position with respect to its primary home mortgage, and 2) remove VNB from the picture without a scar. We hold that, regardless of Chapter, the automatic stay acts to suspend the running of the redemption periods to preserve the status quo. A creditor in VNB's position may seek relief from the stay and a court considering such a motion will be in a better position to weigh all facts involved in each particular situation.

## CONCLUSION

In order to preserve the status quo, we hold that the automatic stay tolls the running of the state law redemption period in a foreclosure action. VNB shall settle an order in conformity with this Memorandum within 5 days.