## In re MARBLE CLIFF CROSSING APARTMENTS, LLC, Debtor.

### No. 11–61545.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Jan. 25, 2013.

Adam J. Biehl, Timothy A. Riedel, Yvette A. Cox, Bailey Cavalieri LLC, Matthew T. Schaeffer, Columbus, OH, for Debtor.

Daniel Craine, Office of the U.S. Trustee, Lawrence Hackett, Pamela Arndt, Columbus, OH, for U.S. Trustee.

### MEMORANDUM OPINION AND ORDER DENYING MTGLQ INVESTOR'S MOTION TO CONVERT DEBTOR'S CASE TO CHAPTER 7 (DOC. NO. 333) AND MOTION TO DESIGNATE CLAIMS AS INSIDERS AND IN BAD FAITH (DOC. NO. 331)

CHARLES M. CALDWELL, Chief Judge.

MTGLQ Investors, L.P. ("MTGLQ"), secured creditor of Marble Cliff Crossing Apartments, LLC ("Debtor"), filed two motions on October 4, 2012. The first motion requested conversion of the Debtor's bankruptcy from Chapter 11 to Chapter 7 of the United States Bankruptcy Code ("Code"). MTGLQ's second motion sought to designate claims held by The Security Network ("TSN") as insider claims or have the Court disregard them as votes cast in bad faith. Based upon the evidence, the Court **DENIES** MTGLQ's Motion to Convert and the Motion to Designate. The Court's findings of fact and conclusions of law follow.

The basis for these Motions is the sale of two claims in the Debtor's bankruptcy by Bresco Solutions, LLC ("Bresco") to TSN. Bresco installed a wireless internet system and security cameras at the Debtor's upscale apartment complex. The Debtor scheduled these obligations as secured. In July 2012 and after the Debtor filed a plan and disclosure statement, MTGLQ offered to purchase Bresco's claims.

Mr. Brent Beatty, a principal of Bresco, both spoke and corresponded with counsel for MTGLQ. They sent Bresco a check representing full payment of its claims. Mr. Beatty testified that he was uncomfortable with MTGLQ's offer because he believed the verbal descriptions of the claims purchase did not correspond with the language in the offer letter included with the check. MTGLQ's counsel also talked with Bresco's counsel, and they discussed purchase terms for Bresco's claims. Those negotiations failed.

Mr. Beatty voided MTGLQ's check and returned it with a note stating that he was not interested in selling his claims. Mr. Beatty also mentioned MTGLQ's purchase offers to Mr. Christopher Deibel, Vice President at Scioto Management Company, who manages the Debtor's apartment community. Further, counsel for MTGLQ told Bresco's counsel that they would file an adversary proceeding to contest the validity and priority of Bresco's claims, and did so on August 24, 2012.

Mr. Beatty testified that after MTGLQ filed the adversary proceeding, a represen-

tative of TSN contacted him and wanted to purchase his claims. Mr. Beatty discussed these purchases with his counsel and a business partner. After deciding to sell, his counsel handled the negotiation of contractual terms, and Bresco received payment in full from TSN.

Mr. Thomas Alexander, owner of TSN, testified that he purchased the claims to position himself favorably to receive future work from Scioto Management Group and the Debtor. Mr. Alexander testified that Mr. John Chester, a member of JJC Trabue Road, LLC, and a minority member of the Debtor, contacted him on August 24, 2012 about purchasing the Bresco claims. The next morning, Mr. Alexander met with Mr. Chester and Bradford Armstrong, managing member of the Debtor and owner of Scioto Management Company, to discuss the potential claims purchase. Mr. Alexander testified that he considers Mr. Chester a friend, and they have been acquainted since childhood. Mr. Alexander has also known Mr. Armstrong since high school.

According to the testimony, during the August 25, 2012 meeting, Mr. Alexander asked about the terms of repayment on his investment and the terms of the purchase. Messrs. Chester and Armstrong did not provide Mr. Alexander with any documentation or written commitment, but they stated that by purchasing the Bresco claims he would position himself favorably for future work planned at the Debtor's property. Additionally and according to the testimony, Mr. Chester stated to Mr. Alexander that he would reimburse any attorney fees associated with this Chapter 11 case.

Mr. Alexander testified that he was familiar with the equipment that secured the Bresco claims, and he inspected the equipment prior to payment. In addition, Mr. Alexander testified he was aware of the Bresco claims litigation, and that he weighed this factor in making his purchase decision. Further, Mr. Alexander testified that as part of the transaction he was not required to vote the claims in any particular manner. Mr. Chester testified that he assisted the sale from Bresco to TSN because he believed that the plan needed an impaired accepting class of creditors.

Having described the factual background, the Court now separately discusses the two Motions.

## I. MTGLQ's Motion for Conversion to Chapter 7

As the bases for dismissal or conversion of this case to Chapter 7, MTGLQ points to Mr. Chester and Mr. Armstrong's actions. Mr. Chester introduced the parties, and both men facilitated the transaction by promising TSN potential future work. Mr. Chester provided additional incentive by agreeing to pay TSN's legal costs. In addition, MTGLQ asserts that the execution of a joint defense agreement between Bresco, TSN, and the Debtor is further proof of bad faith.

Mr. Beatty testified that he had tired of the repeated contact from MTGLQ's representatives and their attempts to purchase the claims. The prospect of litigation and lack of trust were additional factors driving him to pursue alternatives. According to the testimony, Mr. Chester, on behalf of the Debtor, facilitated the purchase of Bresco's claims by TSN. Further, Mr. Chester presented Mr. Alexander an opportunity to potentially perform future services on behalf of the Debtor, and then promised to reimburse Mr. Alexander's legal fees to minimize the risk of his involvement in this bankruptcy proceeding. In turn, Mr. Alexander, exercising his business judgment, purchased the claims for potential future work.

Turning to the legal standards, bad faith actions associated with the filing or prosecution of a bankruptcy case may warrant conversion or dismissal. *Trident Assoc. Ltd., P'ship v. Metropolitan Life Ins. Co. (In re Trident Assoc. Ltd., P'ship)*, 52 F.3d 127, 130 (6th Cir.1995). Courts consider all circumstances, along with the principle of providing a "fresh start" to financially distressed companies and individuals. *Laguna Assoc. Ltd P'ship v. Aetna Casualty and Surety Co. (In re Laguna Assoc. Ltd P'ship)*, 30 F.3d 734, 737–38 (6th Cir.1994). The Sixth Circuit articulated a list of factors that indicate a debtor's bad faith, which includes whether a debtor attempts to avoid repaying debts, forestall an impending foreclosure, or frustrate secured creditors from exercising their legal rights. *Id.* at 738. Movants must establish cause for conversion or dismissal by a preponderance of the evidence. *In re Costa Bonita Beach Resort, Inc.*, 479 B.R. 14, 38 (Bankr.D.P.R. 2012).

In constructing and obtaining acceptance of a plan, debtors can negotiate, compromise, and pursue settlement offers. Debtors, however, cannot solicit votes, either formally or informally, prior to the publication of a disclosure statement and plan. *In re Dow Corning Corp.*, 227 B.R. 111, 118 (Bankr.E.D.Mich.1999). Further, debtors cannot ask a creditor to vote in favor of a plan. *Duff v. U.S. Trustee, et al. (In re California Fidelity, Inc.)*, 198 B.R. 567, 570–74 (9th Cir. BAP 1996).

In this case, the Debtor filed a plan and disclosure statement and then took steps through its principals to obtain its acceptance. Messrs. Chester and Armstrong stepped in to facilitate Bresco's departure from the case and help Mr. Alexander, and his company TSN, purchase Bresco's claims. However, there was no credible evidence presented that these principals coerced Mr. Alexander into purchasing the Bresco claims, or promised that TSN would receive greater remuneration than provided by the plan. In addition, the promise to pay legal fees is Mr. Chester's personal obligation.

There was no credible evidence presented that Mr. Chester or Mr. Armstrong used Debtor funds to achieve plan acceptance, or that they promised anything in exchange for acceptance of the proposed plan. Further, there was no credible evidence presented that any party—the Debtor, MTGLQ, or TSN—acted improperly or outside the bounds of good faith. For all these reasons, the Court finds and concludes that MTGLQ has failed to sustain its burden of proof to convert this case based upon bad faith.

## II. MTGLQ's Motion to Designate Claims

Turning to the motion to designate, MTGLQ argues that Mr. Alexander and his company TSN, acted as proxies of the Debtor in casting votes in favor of confirmation. MTGLQ's premise is that TSN's purchase of the Bresco claims arises from the friendship between Messrs. Alexander, Chester and Armstrong, and that the Debtor's principals controlled TSN's actions. As a result, MTGLQ concludes that this Court should disregard TSN's votes as cast by insiders.

Mr. Chester and Mr. Armstrong credibly testified that they have no control over Mr. Alexander and TSN. Mr. Alexander credibly testified that he considers Mr. Chester a friend, but that he based his decision to purchase the Bresco claims on the prospect of obtaining future work along with his knowledge of the equipment from previous Marble Cliff site visits. The parties discussed the purchase, their respective attorneys negotiated the specific terms of the transaction, and TSN princi-

pals inspected the collateral prior to providing payment on the claims.

Reviewing the legal standard, courts can disregard votes from an accepting impaired class if the relationship with a debtor becomes the motivating factor, rather than the independent exercise of business judgment. In this event, courts may deem a creditor an insider. 11 U.S.C. §§ 101(31), 1126(e), 1129(a)(10); *Three Flint Hill Ltd. Partnership v. Prudential Ins. Co. (In re Three Flint Hill Ltd. Partnership)*, 213 B.R. 292, 300 (D.Md.1997).

In this case, the evidence shows that Messrs. Chester and Armstrong did act to facilitate the purchase of the Bresco claims by TSN. The goal was to obtain an accepting impaired class. However, the Courts finds the testimony credible that TSN was not required to vote their claims in favor of the plan. Instead, Mr. Alexander inspected the equipment and made a business decision that the transaction could potentially lead to future business with the Debtor. On these bases, the Court finds and concludes that Mr. Alexander and TSN do not qualify as nonstatutory insiders of the Debtor.

Finally, the Court turns to MTGLQ's request that the Court disregard TSN's votes accepting the Debtor's plan, premised upon improper solicitation by Messrs. Chester and Armstrong. On this point, MTGLQ has failed to sustain its burden of proof. *See In re Bataa/Kierland, LLC*, 476 B.R. 558, 566 (Bankr.D.Ariz.2012) (holding that the party claiming a vote is in bad faith has a "heavy burden of proof because designation is a narrow exception to the ordinary democratic process ...").

The Court finds the testimony of Mr. Chester and Mr. Armstrong credible that they did not discuss how Mr. Alexander should vote on the plan, or require a favorable vote to obtain future work.

They did act to ensure there was an accepting impaired class. Standing alone, however, such efforts are not sufficient for this Court to disregard TSN's votes. *See Figter Ltd. v. Teachers Ins. and Annuity Assoc. of Am. (In re Figter Ltd.)*, 118 F.3d 635, 638 (9th Cir.1997) (holding that it is good faith for a creditor to vote its self-interest, but it is not good faith for that creditor to vote in pursuit of a "... benefit to which they are not entitled ..."); *Bataa/Kierland*, 476 B.R. at 575–79 (holding that it is not inconsistent with a debtor's role as plan proponent or bad faith under 1126(c) for a debtor to create a class whose acceptance can render a plan confirmable). There is no credible evidence that TSN received any advantage or enhanced treatment under the proposed plan, or that TSN had some motive other than positioning itself to potentially receive future work from the reorganized Debtor.

For the all these reasons, the Court **DENIES** MTGLQ's Motion to Convert and Motion to Designate.

**IT IS SO ORDERED.**